IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LARRY LEE SMALLEY, JR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 5:15-cv-01469-JHE |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Larry Lee Smalley, Jr. ("Smalley") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").[2] (Doc. 1). Smalley timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED**.

### I. Factual and Procedural History

Smalley protectively filed applications for a period of disability, DIB, and SSI in June 2012, alleging he became unable to work beginning August 1, 2008. (Tr. 155-164). The Agency

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

[2] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI. *See* 42 U.S.C. § 1383(c)(3).

1

initially denied Smalley's application and Smalley requested a hearing, where he appeared on September 3, 2013. (Tr. 37-67). After the hearing, the Administrative Law Judge ("ALJ") denied Smalley's claim on December 13, 2013. (Tr. 21-31). Smalley was a fifty-five-year-old male on his hearing date. (Tr. 40). Smalley has a high school education as well as three years of college. (Tr. 40). Smalley's past relevant work was as a construction laborer, CNC router, and warehouse worker. (Tr. 44-45, 63-64). Smalley sought review by the Appeals Council, but it denied his request on June 29, 2015. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On August 26, 2015, Smalley initiated this action. (*See* doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Smalley last met the insured status requirements of the Social Security Act on December 31, 2012 (his date last insured or "DLI") and Smalley had not engaged in substantial gainful activity after his alleged onset date of August 1, 2008. (Tr. 23). At Step Two, the ALJ found Smalley has the following severe impairment: sensorineural hearing loss bilaterally (20 C.F.R. § 404.1520(c) and 416.920(c)). (*Id.*). The ALJ also considered Smalley's medically determinable mental impairments of dysthymic disorder, alcohol abuse, and personality disorder and found, whether singly or in combination, did not cause more than minimal limitation in Smalley's ability to perform basic mental work activities and, therefore, that they were non-severe. (Tr. 23-24). At Step Three, the ALJ found Smalley did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Before proceeding to Step Four, the ALJ determined Smalley's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through his DLI, Smalley had the RFC

> to perform a full range of work at all exertional levels and can understand normal conversations with hearing aids. In order to preserve further hearing loss and for safety reasons, the claimant should avoid work in loud areas without wearing hearing protection and around moving dangerous unguarded machinery.

(Tr. 26).

At Step Four, the ALJ determined that, through the date last insured, Smalley was able to perform his past relevant work as a CNC router, as this work was not precluded by the limitations identified in the ALJ's assessment of Smalley's RFP. (Tr. 29). At Step Five, the ALJ made the alternative determination, based on Smalley's age, education, work experience, and RFC, jobs other than CNC router exist in significant numbers in the national economy that Smalley could perform, including hand packager, assembler, and janitor. (Tr. 30). Therefore, the ALJ determined Smalley has not been under a disability and denied his claim. (Tr. 31).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Smalley argues the ALJ erred in various ways to correctly evaluate his mental illnesses, failing to develop the record as to his joint and back pain, and erroneously concluding Smalley did not meet the criteria for one or more of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.

### A. The ALJ's Application of the Mental Impairment Criteria Was Not Supported by Substantial Evidence

Smalley challenges the ALJ's assessment of his mental illnesses in several ways, all of which relate to the ALJ's assessment of his functional limitations due to mental impairment at Step Two: failing to find Smalley's mental illness severe, ignoring the opinion of the his own consultant physician, failing to develop the record on disabling mental impairments, ignoring the vocationally relevant evidence provided by a non-examining non-treating physician, and relying solely on an ear specialist for mental evaluations. The undersigned considers these attacks together in evaluating the ALJ's application of the mental impairment criteria.

The ALJ found Smalley had medically determinable impairments of dysthymic disorder (a species of depression), alcohol abuse, and personality disorder, but found they were non-severe, either alone or in combination. (Tr. 23). Applying the criteria for analysis of mental impairments in 20 C.F.R. 404.1520a and 416.920a, the ALJ found

> the claimant has no restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Additionally, the undersigned does not find the record shows that the claimant's mental disorders have resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or that the claimant has a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement, or the inability to function independently outside the area of one's home.

(Tr. 24). While Smalley does not appear to contest the ALJ's finding his alcohol abuse was non-severe, he does challenge the ALJ's findings as to his paranoid personality disorder and depression.

6

The record contains two reports bearing on Smalley's mental health, both of which were assigned little weight by the ALJ. (Tr. 25). First, the Disability Determination Service referred Smalley to Dr. Roger C. Rinn, who evaluated him on August 8, 2012. (Tr. 309-313). In describing Smalley's presenting problem, Dr. Rinn observed Smalley had "a history of explosiveness and had walked off many jobs because of his misunderstandings or difficulties with supervisors and coworkers." (Tr. 310). Additionally, Dr. Rinn noted Smalley "distrusts others . . . spends a great deal of time in bed . . . [and] has 'no energy.'" (*Id.*). Dr. Rinn's mental status examination indicated:

> [Smalley's] verbal skills were certainly adequate. He appeared to be depressed and mildly irritable. There were no indications of any psychotic thought processes and bizarre mentation was not found. He showed no evidence of delusions of persecution and/or grandeur. Perceptual disturbance in the form of hallucinations and illusions was not found. His fund of knowledge appeared to be at least high average. His memory for immediate, recent, and remote functions was intact. He knew who the President was. He was knowledgeable of the Olympics. He was oriented as to time, place, person, and circumstances. His sensorium was clear. He was interpersonally adequate but certainly not outgoing. There were no signs of any lethality in terms of suicidal or homicidal mentation or intent.

(Tr. 311). Based on this, Dr. Rinn diagnosed Smalley with dysthymic disorder (a species of depression) and paranoid personality disorder. (Tr. 312). In his report, Dr. Rinn characterized Smalley's mental impairment as "[m]oderate to severe" and noted Smalley "appears to be moderately impaired." (*Id.*). Dr. Rinn concluded Smalley would "have difficulty with supervisors and coworkers due to his suspicious nature." (Tr. 312). Dr. Rinn also assesses Smalley a Global Assessment of Functioning ("GAF") score of 60, indicating moderate mental impairment. (Tr. 25, 312).

The second report came from Dr. Robert Estock, a state agency consultant, who provided a medical source statement indicating Smalley's mental RFC warranted numerous limitations due to understanding and memory, sustained concentration and persistence, social interaction, and

7

adaptation. (Tr. 89-90).  Specifically, Dr. Estock indicated Smalley would probably miss between one and two days per month due to his psychological symptoms.  (Tr. 90).

Smalley appears to argue Dr. Rinn (but not Dr. Estock) was a treating physician, or, because his was the only medical opinion as to mental health, his opinion should be accorded the same weight as a treating physician's opinion. (Doc. 10 at 10).  Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, the opinions of nontreating physicians are not entitled to any special weight or deference.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  The Commissioner is correct neither doctor had an ongoing treating relationship with Smalley such that they qualify as treating physicians; Dr. Rinn examined Smalley one time and Dr. Estock did not examine him at all.  (Doc. 11 at 11).  Therefore, the ALJ was not required to give the opinions of Dr. Rinn and Dr. Estock any particular weight at all.  That said, the ALJ could not simply substitute his own opinion for that of examining physicians; he was required to articulate reasons for assigning little weight to the opinions of Dr. Rinn and Dr. Estock.  *See McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006); 20 C.F.R. 404.1527(e)(2)(ii).

The ALJ's primary justification for assigning little weight to Dr. Rinn's report and GAF score was Dr. Rinn's reliance on Smalley's subjective descriptions of his symptoms, but it is not clear how the ALJ made that determination.  This is especially puzzling because the ALJ credited the portions of Dr. Rinn's report that the ALJ believed did *not* support mental illness, with no

explanation for why those portions were more reliable than the portions supporting mental impairment: "the claimant's consultative psychological examination in August 2012 noted the claimant's verbal skills as adequate with only a mildly irritable attitude, intact memory, an estimated high average fund of knowledge, no evidence of delusions, hallucinations, or psychotic thoughts, and adequate but not outgoing interpersonal skills."  (Tr. 24).  The ALJ's reliance on this cherrypicked portion to undermine Smalley's reported paranoid personality disorder and depression is additionally problematic because it is tantamount to suggesting Smalley lacks *any* mental impairment simply because he does not have *every* mental impairment.

The ALJ contrasted the evaluations of Dr. Rinn and Dr. Estock with other physicians' findings, placing greater weight on "[c]linical examinations of record [which] noted the claimant as alert and oriented in time, place, and person with normal mood and appropriate affect."  (Tr. 24-25).  To support this, the ALJ cites visits by Smalley to Dr. Bruce A. Morgan, a consulting ENT whom Smalley saw to evaluate his hearing, (tr. 314-320), and Dr. Randle Middleton, who treated Smalley for pneumonia, (tr. 325-331).  But the ALJ offers no reason for elevating these physicians' notes on conditions unrelated to those Smalley sought treatment for above the opinions of specialists, especially when the notes are brief, cursory, and undeveloped with any supporting facts.  An ALJ "cannot pick and choose among a doctor's records to support his own conclusions," which is what the ALJ seems to have done here.  *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

The ALJ cited Smalley's report of his own mental function as "fairly good," indicating he could "use a computer, watch television, handle money accounts, spend time with others, follow instructions, and play video games and the guitar."  (Tr. 24).  Apart from "spend[ing] time with others," none of this contradicts the severity of Smalley's mental health diagnosis, which is

primarily about his interactions with others.  As to Smalley's reports of social activities, he stated he "lives with his mother," whom he sees on a daily basis, and "has a friend he sees once a month." (Tr. 237).  In a purely technical sense, this is "spend[ing] time with others," but no reasonable person would accept this evidence as adequate to conclude Smalley has "no difficulties in maintaining social functioning," (tr. 24), such that it undermined Dr. Rinn and Dr. Estock.

The ALJ also cited the sparseness of the record as evidence of the non-severity of Smalley's mental impairments; the ALJ noted Smalley had not initially alleged a mental component in his disability filing, nor had he sought treatment, received a formal diagnosis, or been prescribed medication for mental health issues. (*Id.*).  The ALJ thus took the absence of particular kinds of medical evidence to be evidence of the conditions' lack of severity, and this was the primary basis for discrediting Dr. Estock's opinion.  (Tr. 25).  Lack of treatment for a condition can supply substantial evidence for an ALJ to conclude that condition is not severe.  *See Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011).  However, lack of treatment is relevant to discredit a claimaint's testimony, not medical evidence.  *See* SSR 96-7P ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  A diagnosis is not invalid simply because the condition had previously been undiagnosed.

The Commissioner argues Smalley's activities support his ability to perform basic work activities notwithstanding his mental condition and undermine the limitations placed by Dr. Rinn and Dr. Estock, but she does not specifically identify which activities bolster this conclusion.  She first cites the ALJ's decision, but the portion she references discusses only Smalley's hearing loss and has no bearing on Smalley's mental impairment.  (*See* doc. 11 at 10, 12) (citing tr. 27).  The

Commissioner also cites Smalley's hearing transcript, (*see* doc. 11 at 10, 12), but, again, the portions she cites are irrelevant to whatever limitations Smalley may experience due to his mental impairments: they discuss yard work and household chores (tr. 46-48), lifting, (tr. 50), balancing a checkbook, (tr. 59), and doing laundry, (tr. 62). This is not inconsistent with severe impairment due to depression and paranoid personality disorder and is not substantial evidence supporting the ALJ's finding.

Taken as a whole, the ALJ's findings as to Smalley's functional limitations due to mental illness were replete with error and not supported by substantial evidence. This warrants reversal and remand.

### B. The ALJ Was Not Required To Develop The Record Regarding Smalley's Back And Joint Pain

Next, Smalley argues it was error for the ALJ not to develop the record regarding his complaints of back and joint pain. (Doc. 10 at 19-20). In support of this, Smalley points to Dr. Morgan's notes, which indicate Smalley admitted "joint pain, chronic back or neck problems" and daily use of four Advil and four Tylenol over the previous three weeks. (*Id.* at 19; Tr. 315-316). Since the ALJ was on notice this condition was present, Smalley says, he should have developed the record further to determine what physical limitations it placed on Smalley. The Commissioner argues it was immaterial the ALJ failed to conclude Smalley's joint and back pain was a severe impairment, as the ALJ found another severe impairment and therefore did not stop his analysis at Step Two. (Doc. 11 at 13). Smalley counters this misses the mark; whether the ALJ found Smalley disabled at Step Two due to a different condition does not bear on whether the ALJ took Smalley's back and joint pain into account in determining his RFC. (Doc. 12 at 8).

"It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently,

[she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (internal citations omitted). While Plaintiff is correct "[t]he record is devoid of any medical evidence with regard to Mr. Smalley's physical limitations," (doc. 10 at 19), Smalley stated his back pain was not debilitating. When asked by the ALJ to describe his back pain after sitting still for an hour, Smalley stated: "[m]y lower back will start having like a dull pain, but it's not—it's not like a bad pain." (Tr. 50). Smalley characterized the pain as "between three and five" on a scale from zero to ten, and stated "it's not anything that would disabilitate [sic] me maybe." (*Id.*). The record also contains no evidence Smalley ever sought treatment for back or joint pain, and Smalley explicitly denied he was being treated for back disorders. (Tr. 49). Where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson, v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Faced with a denial from Smalley and the absence of any other indication Smalley's back pain caused him limitations, the ALJ had no duty to solicit medical evidence to prove Smalley wrong.

    **C. The ALJ's Erroneous Evaluation of Smalley's Functional Limitations Due to Mental Impairment Warrants Remand to Consider Whether Smalley's Mental Impairment Meets or Equals One or More of the Listings**

Because the ALJ erroneously discounted the opinions of Dr. Rinn and Dr. Estock in assessing Smalley's functional limitations due to mental impairment, he did not adequately consider whether those mental impairments (whether alone or in combination with Smalley's other severe impairments) met or equaled one or more of the listings. On remand, if, after reconsideration of the medical evidence, the ALJ determines Smalley's mental impairments, alone or in combination, constitute a severe impairment, the ALJ should consider whether those mental impairments meet or equal a listing.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Humphrey's claim for a period of disability and disability insurance benefits is **REVERSED** and this action **REMANDED** for further proceedings consistent with this memorandum opinion.

DONE this 30th day of March, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE